1
2
3
4
5
6
7
8

# UNITED STATES DISTRICT COURT

## EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| MICHAEL WALTERS, | CASE NO. 1:04-CV-05248-AWI-LJO-P |
| Plaintiff, | FINDINGS AND RECOMMENDATIONS RECOMMENDING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT BE GRANTED |
| v. | |
| C/O P. DOAN, et al., | (Doc. 34) |
| Defendants. | |
| _____/ | |

I.      Defendants' Motion for Summary Judgment

        A.      Procedural History

        Plaintiff Michael Walters ("plaintiff") is a state prisoner proceeding pro se and in forma pauperis in this civil rights action pursuant to 42 U.S.C. § 1983.  This action is proceeding on plaintiff's amended complaint, filed July 7, 2004, against defendants Doan and Desimas ("defendants") for acting with deliberate indifference to plaintiff's safety, in violation of the Eighth Amendment.[1]  (Doc. 13.)  On April 20, 2006, defendants filed a motion for summary judgment. (Docs. 34, 35.)  After obtaining an extension of time, plaintiff filed an opposition to defendants' motion on May 15, 2006, and defendants filed a reply on May 18, 2006.[2]  (Docs. 38, 39.)

///

---

        [1] On January 20, 2005, plaintiff's due process claim was dismissed from this action for failure to state a claim upon which relief may be granted.  (Doc. 13.)

        [2] Plaintiff was provided with notice of the requirements for opposing a motion for summary judgment by the court in an order filed on January 25, 2005.  Klingele v. Eikenberry, 849 F.2d 409 (9th Cir. 1988).  (Doc. 15.)

1

1    B.    Legal Standard

2    Summary judgment is appropriate when it is demonstrated that there exists no genuine issue

3    as to any material fact, and that the moving party is entitled to judgment as a matter of law.  Fed. R.

4    Civ. P. 56(c).  Under summary judgment practice, the moving party

5            [A]lways bears the initial responsibility of informing the district court
             of the basis for its motion, and identifying those portions of "the
6            pleadings, depositions, answers to interrogatories, and admissions on
             file, together with the affidavits, if any," which it believes
7            demonstrate the absence of a genuine issue of material fact.

8    Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986).  "[W]here the nonmoving party will bear the

9    burden of proof at trial on a dispositive issue, a summary judgment motion may properly be made

10   in reliance solely on the 'pleadings, depositions, answers to interrogatories, and admissions on file.'"

11   Id.  Indeed, summary judgment should be entered, after adequate time for discovery and upon

12   motion, against a party who fails to make a showing sufficient to establish the existence of an

13   element essential to that party's case, and on which that party will bear the burden of proof at trial.

14   Id. at 322.  "[A] complete failure of proof concerning an essential element of the nonmoving party's

15   case necessarily renders all other facts immaterial."  Id.  In such a circumstance, summary judgment

16   should be granted, "so long as whatever is before the district court demonstrates that the standard

17   for entry of summary judgment, as set forth in Rule 56(c), is satisfied."  Id. at 323.

18   If the moving party meets its initial responsibility, the burden then shifts to the opposing

19   party to establish that a genuine issue as to any material fact actually does exist.  Matsushita Elec.

20   Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986).  In attempting to establish the existence

21   of this factual dispute, the opposing party may not rely upon the denials of its pleadings, but is

22   required to tender evidence of specific facts in the form of affidavits, and/or admissible discovery

23   material, in support of its contention that the dispute exists.  Fed. R. Civ. P. 56(e); Matsushita, 475

24   U.S. at 586 n.11.  The opposing party must demonstrate that the fact in contention is material, i.e.,

25   a fact that might affect the outcome of the suit under the governing law, Anderson v. Liberty Lobby,

26   Inc., 477 U.S. 242, 248 (1986); T.W. Elec. Serv., Inc. v. Pacific Elec. Contractors Ass'n, 809 F.2d

27   626, 630 (9th Cir. 1987), and that the dispute is genuine, i.e., the evidence is such that a reasonable

28   ///

1  jury could return a verdict for the nonmoving party, <u>Wool v. Tandem Computers, Inc.</u>, 818 F.2d

2  1433, 1436 (9th Cir. 1987).

3       In the endeavor to establish the existence of a factual dispute, the opposing party need not

4  establish a material issue of fact conclusively in its favor.  It is sufficient that "the claimed factual

5  dispute be shown to require a jury or judge to resolve the parties' differing versions of the truth at

6  trial."  <u>T.W. Elec. Serv.</u>, 809 F.2d at 631.  Thus, the "purpose of summary judgment is to 'pierce

7  the pleadings and to assess the proof in order to see whether there is a genuine need for trial.'"

8  <u>Matsushita</u>, 475 U.S. at 587 (quoting Fed. R. Civ. P. 56(e) advisory committee's note on 1963

9  amendments).

10       In resolving the summary judgment motion, the Court examines the pleadings, depositions,

11  answers to interrogatories, and admissions on file, together with the affidavits, if any.  Fed. R. Civ.

12  P. 56(c).  The evidence of the opposing party is to be believed, <u>Anderson</u>, 477 U.S. at 255, and all

13  reasonable inferences that may be drawn from the facts placed before the Court must be drawn in

14  favor of the opposing party, <u>Matsushita</u>, 475 U.S. at 587 (citing <u>United States v. Diebold, Inc.</u>, 369

15  U.S. 654, 655 (1962) (per curiam).  Nevertheless, inferences are not drawn out of the air, and it is

16  the opposing party's obligation to produce a factual predicate from which the inference may be

17  drawn.  <u>Richards v. Nielsen Freight Lines</u>, 602 F. Supp. 1224, 1244-45 (E.D. Cal. 1985), <u>aff'd</u>, 810

18  F.2d 898, 902 (9th Cir. 1987).

19       Finally, to demonstrate a genuine issue, the opposing party "must do more than simply show

20  that there is some metaphysical doubt as to the material facts.  Where the record taken as a whole

21  could not lead a rational trier of fact to find for the nonmoving party, there is no 'genuine issue for

22  trial.'"  <u>Matsushita</u>, 475 U.S. at 587 (citation omitted).

23       C.   <u>Undisputed Facts</u>

24  1.   Plaintiff was housed at the California Substance Abuse Treatment Facility (CSATF) on June

25      16, 2003.

26  2.   In June 2003, plaintiff was assigned to D-Facility, a sensitive-needs yard (SNY).

27  3.   SNY houses inmates who need protection such as gang dropouts, pedophiles, and rapists.

28  ///

4.   Plaintiff was placed in D-Facility because he identified himself as a validated Mexican Mafia dropout.

5.   Plaintiff was scheduled for a medical appointment on June 16, 2003, concerning his shoulder and back pain.

6.   Defendants, who were transportation officers, arrived at D-Facility between 7:30 a.m. and 8:30 a.m. to pick up plaintiff.

7.   Defendant Desimas, a male officer, performed an unclothed body search of plaintiff, and placed him in restraints before placing him in the car.

8.   Plaintiff never met or interacted with either defendant before that date.

9.   Plaintiff briefly discussed his medical problems with defendants during the short, two-minute ride to the next stop, but there were no discussions regarding plaintiff's status as a gang dropout.

10.  Defendants next stopped at C-yard to pick up another inmate for transport to the medical facility.

11.  Once they arrived at C-yard, defendant Desimas went inside to escort inmate Velasquez, a disabled inmate, while defendant Doan remained in the vehicle with plaintiff.

12.  Inmate Velasquez is disabled from his waist down and requires the use of a wheelchair.

13.  Defendant Desimas thoroughly searched inmate Velasquez before placing him in rear of the vehicle.

14.  Mechanical restraints were not placed on inmate Velasquez.[3]

15.  Plaintiff did not recognize inmate Velasquez and did not know him before this incident.

16.  Plaintiff had a brief conversation with inmate Velasquez during the short, fifteen minute car ride to the hospital.  Plaintiff asked inmate Velasquez whether he was heading to the Pain Management Clinic, but did not discuss anything else.

17.  Once they arrived at the hospital, plaintiff was placed in a holding cell and advised by the medical staff that they were running approximately three hours behind schedule.  Plaintiff

[3] Undisputed by defendants for this motion only.

4

1    advised the medical staff that he did not want to wait around and signed a form

2    acknowledging that he was refusing his medical visit.

3    18.   Defendants then gathered plaintiff and inmate Velasquez and placed them back into the

4          vehicle.  Upon entering the vehicle, plaintiff sensed a change in inmate Velasquez's

5          expression and felt uneasy.  Plaintiff sensed some hostility from inmate Velasquez even

6          though the two did not have any conversation with each other while at the medical facility

7          or after entering the car for the return trip.

8    19.   Plaintiff did not inform either defendant of his uneasiness or concerns about inmate

9          Velasquez after entering the vehicle for the return trip.

10   20.   The drive from the Acute Care Hospital (ACH) to CSATF's sallyport entrance took

11         approximately five minutes.  They then had to wait a couple of minutes to clear the sallyport

12         area.  There were officers stationed at the sallyport area.  Plaintiff never expressed any

13         concerns he may have had regarding inmate Velasquez to defendants or any of the officers

14         at the sallyport area.

15   21.   Shortly after leaving the sallyport, inmate Velasquez lifted himself onto his knees and started

16         striking plaintiff.

17   22.   Defendant Doan yelled for defendant Desimas to stop the vehicle.  Once the vehicle was

18         stopped, defendants immediately exited the car, opened the right rear door, and pulled

19         plaintiff from the car.

20         D.    Discussion

21         In his amended complaint, plaintiff alleges that on June 16, 2003, while being transported

22   for a medical appointment, he was attacked by another inmate. (Doc. 8, pgs. 3-4.) Plaintiff alleges

23   that he was a gang drop out and restrained in waist chains and leg irons while the other inmate was

24   an active gang member who was unrestrained. (Id.) Plaintiff alleges that although the other inmate

25   was in a wheelchair, the inmate had use of his upper body.  (Id., pg. 3.)  Plaintiff alleges that

26   defendants Doan and Desimas knew plaintiff was in protective custody, and "deliberately placed

27   [his] life in jeopardy" by transporting him in restraints with an unrestrained inmate who was an

28   active gang member, in violation of his rights under the Eighth Amendment.  (Id., pg. 4.)

To constitute cruel and unusual punishment in violation of the Eighth Amendment, prison conditions must involve "the wanton and unnecessary infliction of pain . . . ." Rhodes v. Chapman, 452 U.S. 337, 347 (1981). Although prison conditions may be restrictive and harsh, prison officials must provide prisoners with food, clothing, shelter, sanitation, medical care, and personal safety. Id.; Toussaint v. McCarthy, 801 F.2d 1080, 1107 (9th Cir. 1986); Hoptowit v. Ray, 682 F.2d 1237, 1246 (9th Cir. 1982). "What is necessary to show sufficient harm for purposes of the Cruel and Unusual Punishment Clause depends upon the claim at issue . . . ." Hudson v. McMillian, 503 U.S. 1, 8 (1992). "The objective component of an Eighth Amendment claim is . . . contextual and responsive to contemporary standards of decency." Id. at 8 (quotations and citations omitted). "[E]xtreme deprivations are required to make out a[n] [Eighth Amendment] conditions-of-confinement claim." Id. at 9 (citation omitted). With respect to this type of claim, "[b]ecause routine discomfort is part of the penalty that criminal offenders pay for their offenses against society, only those deprivations denying the minimal civilized measure of life's necessities are sufficiently grave to form the basis of an Eighth Amendment violation." Id. (quotations and citations omitted).

Where a prisoner alleges injuries stemming from unsafe conditions of confinement, prison officials may be held liable only if they acted with "deliberate indifference to a substantial risk of serious harm." Frost v. Agnos, 152 F.3d 1124, 1128 (9th Cir. 1998). The deliberate indifference standard involves an objective and a subjective prong. First, the alleged deprivation must be, in objective terms, "sufficiently serious . . . ." Farmer v. Brennan, 511 U.S. 825, 834 (1994) (citing Wilson v. Seiter, 501 U.S. 294, 298 (1991)). Second, the prison official must "know[] of and disregard[] an excessive risk to inmate health or safety . . . ." Farmer, 511 U.S. at 837. Thus, a prison official may be held liable under the Eighth Amendment for denying humane conditions of confinement only if he knows that inmates face a substantial risk of harm and disregards that risk by failing to take reasonable measures to abate it. Id. at 837-45. Prison officials may avoid liability by presenting evidence that they lacked knowledge of the risk, or by presenting evidence of a reasonable, albeit unsuccessful, response to the risk. Id. at 844-45. Mere negligence on the part of the prison official is not sufficient to establish liability, but rather, the official's conduct must have been wanton. Id. at 835; Frost, 152 F.3d at 1128.

1    In June of 2003, plaintiff was assigned to D-Facility, a sensitive-needs yard at CSATF, which

2    houses inmates who need protection such as gang dropouts, pedophiles, and rapists.  (Undisputed

3    Facts 1-3.)  Plaintiff was placed in D-Facility because he identified himself as a validated Mexican

4    Mafia dropout.  (U.F. 4.)

5    On June 16, 2004, plaintiff was scheduled for a medical appointment concerning his shoulder

6    and back pain, and defendants, who were transportation officers, arrived at D-Facility between 7:30

7    a.m. and 8:30 a.m. to pick up plaintiff.  (U.F. 5-6.)  Plaintiff never met or interacted with either

8    defendant before that date.  (U.F. 8.)  Defendant Desimas, a male officer, performed an unclothed

9    body search of plaintiff, and placed him in restraints before placing him in the car.  (U.F. 7.)

10   Plaintiff briefly discussed his medical problems with defendants during the short, two-minute ride

11   to the next stop, but there were no discussions regarding plaintiff's status as a gang dropout.  (U.F.

12   9.)

13   Defendants next stopped at C-yard to pick up another inmate for transport to the medical

14   facility.  (U.F. 10.)  Once they arrived at C-yard, defendant Desimas went inside to escort inmate

15   Velasquez while defendant Doan remained in the vehicle with plaintiff.  (U.F. 11.)  Inmate

16   Velasquez is disabled from his waist down and requires the use of a wheelchair.  (U.F. 12.)

17   Defendant Desimas thoroughly searched inmate Velasquez before placing him in rear of the vehicle

18   without mechanical restraints.  (U.F. 13-14.)

19   Plaintiff did not recognize inmate Velasquez and did not know him.  (U.F. 15.)  Plaintiff had

20   a brief conversation with inmate Velasquez during the short, fifteen minute car ride to the hospital.

21   (U.F. 16.)  Plaintiff asked inmate Velasquez whether he was heading to the Pain Management Clinic,

22   but did not discuss anything else.  (Id.)

23   Once they arrived at the hospital, plaintiff was placed in a holding cell and advised by the

24   medical staff that they were running approximately three hours behind schedule. (U.F. 17.)  Plaintiff

25   advised the medical staff that he did not want to wait around and signed a form acknowledging that

26   he was refusing his medical visit.  (Id.) Defendants then gathered plaintiff and inmate Velasquez and

27   placed them back into the vehicle.  (U.F. 18.)

28   ///

Upon entering the vehicle, plaintiff sensed a change in inmate Velasquez's expression and felt uneasy. (Id.)  Plaintiff sensed some hostility from inmate Velasquez even though the two did not have any conversation with each other while at the medical facility or after entering the car for the return trip. (Id.)  Plaintiff did not inform either defendant of his uneasiness or concerns about inmate Velasquez after entering the vehicle for the return trip. (U.F. 19.)

The drive from ACH to CSATF's sallyport entrance took approximately five minutes. (U.F. 20.)  They then had to wait a couple of minutes to clear the sallyport area, at which there were officers stationed. (Id.)  Plaintiff never expressed any concerns he may have had regarding inmate Velasquez to defendants or any of the officers at the sallyport area. (Id.)

Shortly after leaving the sallyport, inmate Velasquez lifted himself onto his knees and started striking plaintiff. (U.F. 21.)  Defendant Doan yelled for Defendant Desimas to stop the vehicle. (U.F. 22.)  Once the vehicle was stopped, defendants immediately exited the car, opened the right rear door and pulled plaintiff from the car. (Id.)

Defendants argue that there is no evidence they knew transporting plaintiff with inmate Velasquez presented a substantial risk of harm to plaintiff, or that, assuming they should have suspected a potential problem, they acted deliberately indifferent to either inmate's safety. (Motion, 8:22-28.) Defendants argue that both inmates were searched prior to the transport, inmate Velasquez had no known gang affiliation, the inmates were never left unattended, and plaintiff's deposition testimony establishes that he is merely speculating that defendants intentionally set him up to be attacked by inmate Velasquez. (Id., 8:7-21 & 9:1-2; Exhibit A.62:24-63:24; Exhibit B, Desimas Dec., ¶7.)

The court finds that defendants have met their initial burden of informing the court of the basis for their motion, and identifying those portions of the record which they believe demonstrate the absence of a genuine issue of material fact.  The burden therefore shifts to plaintiff to establish that a genuine issue as to any material fact actually does exist. See Matsushita, 475 U.S. at 586. As previously stated, in attempting to establish the existence of this factual dispute, plaintiff may not rely upon the mere allegations or denials of his pleadings, but is required to tender evidence of specific facts in the form of affidavits, and/or admissible discovery material, in support of its

contention that the dispute exists.  Rule 56(e); <u>Matsushita</u>, at 586 n.11; <u>First Nat'l Bank</u>, 391 U.S. at 289; <u>Strong v. France</u>, 474 F.2d 747, 749 (9th Cir. 1973).  Plaintiff's verified complaint and opposition constitute opposing affidavits for purposes of summary judgment rule, to the extent they are based on personal knowledge of specific facts which are admissible in evidence.  <u>Moran v. Selig</u>, 447 F.3d 948, 759-60 (9th Cir. 2006); <u>Jones v. Blanas</u>, 393 F.3d 918, 923 (9th Cir. 2004); <u>Johnson v. Meltzer</u>, 134 F.3d 1393, 1399-1400 (9th Cir. 1998).

Although plaintiff contends that defendants knew of a substantial risk of harm to him and disregarded that risk, plaintiff has submitted no evidence in support of this contention.  Speculative and/or conclusory assertions are insufficient to raise triable issues of fact.  At this stage in the proceedings, plaintiff must do more than set forth general assertions regarding the risk to his safety or the knowledge and intent of defendants.

"Deliberate indifference is a high legal standard." <u>Toguchi v. Chung</u>, 391 F.3d 1051, 1060 (9th Cir. 2004).  "Under this standard, the prison official must not only 'be aware of the facts from which the inference could be drawn that a substantial risk of serious harm exists,' but that person 'must also draw the inference.'" <u>Id</u>. at 1057 (quoting <u>Farmer</u>, 511 U.S. at 837).  "'If a prison official should have been aware of the risk, but was not, then the official has not violated the Eighth Amendment, no matter how severe the risk.'" <u>Id</u>. (quoting <u>Gibson v. County of Washoe, Nevada</u>, 290 F.3d 1175, 1188 (9th Cir. 2002)).

Viewing the evidence in the light most favorable to plaintiff and drawing all justifiable inferences in plaintiff's favor, <u>Eastman Kodak Co. v. Image Technical Servs., Inc.</u>, 504 U.S. 451, 456 (1992); <u>Anderson</u>, 477 U.S. at 255, defendants knew plaintiff was in protective custody because they picked him up from a sensitive-needs yard, defendants picked inmate Velasquez up from an active gang yard, and defendants transported plaintiff in restraints while transporting inmate Velasquez, a wheelchair bound inmate, unrestrained.  The court finds that this is insufficient to support a claim that inmate Velasquez presented a substantial risk of harm to plaintiff and that defendants knew of and disregarded that substantial risk.  There is no evidence beyond plaintiff's conclusory allegation that inmate Velaquez was an active gang member.  Assuming plaintiff's bare assertion is sufficient evidence in the face of the undisputed fact that plaintiff did not

recognize and did not know Velasquez, plaintiff has presented no evidence that defendants knew Velasquez was an active gang member or knew that plaintiff was a gang drop-out.  In sum, plaintiff has not presented any evidence sufficient to raise a triable issue of material fact on his Eighth Amendment claim against defendants for acting with deliberate indifference to his safety, and defendants are therefore entitled to judgment as a matter of law.[4]

E.    Conclusion

Based on the foregoing, it is HEREBY RECOMMENDED that defendants' motion for summary judgment, filed April 20, 2006, be GRANTED, thus concluding this action in its entirety.

These Findings and Recommendations will be submitted to the United States District Judge assigned to the case, pursuant to the provisions of Title 28 U.S.C. § 636(b)(l).  Within **thirty (30) days** after being served with these Findings and Recommendations, the parties may file written objections with the court.  The document should be captioned "Objections to Magistrate Judge's Findings and Recommendations."  The parties are advised that failure to file objections within the specified time may waive the right to appeal the district court's order.  Martinez v. Ylst, 951 F.2d 1153 (9th Cir. 1991).

IT IS SO ORDERED.

**Dated:    August 28, 2006**                    _____/s/ Lawrence J. O'Neill_____
b9ed48                                            UNITED STATES MAGISTRATE JUDGE

---

[4] In light of the finding that defendants are entitled to summary judgment on plaintiff's claim against them on the merits, the court does not reach defendants' argument that they are entitled to qualified immunity.